UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES L BANISTER,

                Petitioner,

v.                                                                                            Case No. 23-cv-0248-bhl

GARY BOUGHTON,

                Respondent.

## ORDER DENYING SECTION 2254 HABEAS PETITION

       On February 21, 2023, petitioner Charles L. Banister, a state prisoner incarcerated at the Wisconsin Secure Program Facility, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) Banister asserts three grounds for relief, two related to the alleged ineffectiveness of his trial counsel, along with a third claim that the state court violated his due process rights by relying upon inaccurate information in sentencing him. (*Id.* at 7–16.) Banister's petition is now fully briefed, and the record confirms that federal habeas relief is not warranted on any ground. Accordingly, Banister's petition will be denied.

## BACKGROUND

       On June 17, 2015, the State of Wisconsin charged Banister with five counts of first-degree sexual assault with the use of a dangerous weapon; two counts of second-degree sexual assault of a child under the age of sixteen; two counts of kidnapping with the use of a dangerous weapon; and one count of armed robbery. (ECF No. 8-4 at 2.) According to the criminal complaint, Banister separately sexually assaulted two minor victims at gunpoint. (*Id.*) One of the victims (D.C.) was fifteen years old at the time of the assault; the other victim (D.R.B.) was sixteen. (*Id.*) Banister ultimately agreed to plead guilty to one count of second-degree sexual assault of a child, based on his contact with D.C., the younger (fifteen-year-old) victim. (ECF No. 8-8.) Under the plea deal, the other second-degree sexual assault of a child charge was dismissed outright, and the remaining eight charges were dismissed and "read in." (*Id.* at 2.) On December 2, 2016, the circuit

court sentenced Banister to twenty-five years of initial confinement followed by fifteen years of extended supervision. (ECF No. 8-9 at 41.)

After sentencing, Banister filed a postconviction motion, arguing that he had been denied effective assistance of counsel and, therefore, his guilty plea was not knowing, intelligent, and voluntary. (ECF No. 8-4 at 2.) More specifically, he claimed his trial counsel had promised him that the State would recommend a sentence of "close to time served." (*Id.*) Consistent with *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979), the circuit court held an evidentiary hearing on Banister's claim and heard testimony from three key witnesses: (1) Banister's trial counsel; (2) the prosecuting attorney; and (3) Banister. (*Id.*)

Banister's trial counsel denied that he ever told Banister that the State was going to ask for a sentence of close to time served. (ECF No. 8-10 at 10, 22.) He testified that he explained to Banister that the State's plea offer included a "free to argue at sentencing" term, which meant both sides were free to recommend and argue for a sentence without limitation. (*Id.* at 7–8.) Counsel also explained that Banister wanted to pursue a consent defense at trial, but counsel had explained to him, and Banister understood, that "there was no consent defense" to the charge of having sex with a fifteen-year-old victim. (*Id.* at 9.)

The prosecuting attorney confirmed that the plea agreement was on a "free to argue" basis. (*Id.* at 54.) Like Banister's trial counsel, she denied that she had any other agreement with defense counsel. (*Id.* at 55.) The prosecutor also testified to the strength of the case against Banister, that he received a "very lenient plea deal," and that a recommendation of time served would not be reasonable given the serious allegations against him. (*Id.* at 55–56.)

Banister conceded on cross-examination that he had signed papers acknowledging that the State was "free to argue" for any sentence and setting forth the maximum sentence for the charge. (*Id.* at 39–40.) He also admitted acknowledging these facts multiple times at his plea hearing. (*Id.* at 41–43.) Banister further confirmed that trial counsel informed him that his guilty plea would expose him to a potential forty-year sentence. (*Id.* at 32–33.) Banister nevertheless claimed his trial counsel had told him that the prosecutor had agreed she would recommend that Banister get 18 months if he took the plea deal but would seek the maximum 500-year sentence if he rejected the offer. (*Id.* at 35–36.) But he admitted that he never told the court about the government's alleged promise concerning his sentence despite being given multiple opportunities at the plea and sentencing hearings. (*Id.* at 41–43.) He insisted he would have gone to trial absent counsel's

promise and that his brother would have testified that he and D.C. were having consensual sex. (*Id.* at 37–38.) Banister also confirmed that the plea form he signed stated "consent to sexual contact or intercourse is not a defense" immediately above his signature but testified that he did not understand the language when he signed it. (*Id.* at 47–48.) Banister claimed he did not want to plead guilty because he believed he could win at trial but agreed to take the plea deal if counsel called his mother and told her how much time Banister was facing. (*Id.* at 32.)

The postconviction court denied Banister's motion, citing to a host of evidence. The court noted that Banister's signed plea agreement stated that he would plead to one count of second-degree sexual assault of a child, included the "free to argue" language, and described the maximum penalty of 40 years on its first page. (*Id.* at 75.) The court also pointed to the trial judge's confirmation of the substance of the plea negotiations with Banister and his counsel multiple times at both the plea and sentencing hearings. (*Id.* at 75–77.) The court expressed skepticism at Banister's testimony given that he had only come forward with his claim months after sentencing and, even then, implausibly alleged "that some kind of back room deal had taken place between [trial counsel] and the prosecutor." (*Id.* at 77–78.) The court emphasized that Banister's claim was inconsistent with the trial judge's actions, including his having, on the record, confirmed Banister's understanding of the plea agreement and that the court was free to impose whatever sentence it found appropriate. (*Id.* at 78–79.) The post-conviction court reiterated that Banister "agreed to plead guilty on the record to the recommendation of everybody's free to argue." (*Id.* at 80.) The court also specifically found that Banister's trial counsel and the prosecutor were credible, and Banister was not. (*Id.* at 81.) It concluded that "all of the credible testimony" supported a finding that Banister's plea was entered freely, voluntarily, and knowingly, and Banister's trial counsel was therefore not ineffective. (*Id.*)

Banister appealed his conviction and the denial of his postconviction motion to the Wisconsin Court of Appeals. His appellate counsel filed a no-merit report pursuant to Wis. Stat. § 809.32 and *Anders v. California*, 386 U.S. 748 (1967). (ECF No. 8-2.) Banister filed a response to the no-merit report, arguing that counsel was ineffective and his guilty plea was not knowing, voluntary, and intelligent. (ECF No. 8-3 at 1–2.) On February 22, 2022, the court of appeals affirmed Banister's conviction in a summary disposition order. (ECF No. 8-4.) It concluded that the circuit court complied with its obligations for taking guilty pleas and there was no arguable merit to a claim that Banister's plea was not knowing, voluntary, and intelligent. (*Id.* at 3.) The

court also concluded that Banister had not received ineffective assistance of counsel, noting the postconviction court's finding that trial counsel and the prosecutor had testified credibly in describing the final plea deal and its presentment to Banister. (*Id.* at 4–5.) The court also noted that the circuit court confirmed Banister's understanding of the negotiations at the plea hearing and Banister made no mention of an alternative understanding. (*Id.* at 5.) With regard to sentencing, the court concluded that the circuit court appropriately considered relevant sentencing objectives and factors and imposed a sentence authorized by law and within its discretion. (*Id.* at 5–6.) The court of appeals rejected Banister's other arguments and concluded the record revealed no other potential issues of arguable merit. (*Id.* at 6.)

On March 22, 2022, Banister petitioned the Wisconsin Supreme Court for review. (ECF No. 8-5.) His petition was denied on May 18, 2022. (ECF No. 8-7.) This habeas petition followed.

## LEGAL STANDARD

To obtain federal habeas relief, Banister must show that his state court custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To carry this burden, he must show that the Wisconsin courts rejected his claims "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). But "[w]hen no state court has squarely addressed the merits of a habeas claim," the claim must be reviewed "under the pre-AEDPA standard of 28 U.S.C. § 2243" which "dispose[s] of the matter as law and justice require." *Ramirez v. Tegels*, 963 F.3d 604, 612 (7th Cir. 2020) (quoting *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012)). In other words, the claim is reviewed *de novo*. *Tabb v. Christianson*, 855 F.3d 757, 764–65 (7th Cir. 2017) (citing *Cone v. Bell*, 556 U.S. 449, 472 (2009)).

A federal habeas court reviews "the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citation omitted). In this case, that was the Wisconsin Court of Appeals. Accordingly, to resolve Banister's petition, this Court must review that state appellate court's decision for reasonableness, through the deferential lens of the Antiterrorism and Effective Death Penalty Act (AEDPA) unless the state court did not squarely address the merits, in which case the Court's review is *de novo*. *See Ramirez*, 963 F.3d at 612.

**ANALYSIS**

Banister petitions the Court for habeas relief on grounds of ineffective assistance of counsel and a due process violation. Respondent argues that Banister's claims are meritless and that his due process claim is procedurally defaulted. The Court agrees with Respondent that Banister is not entitled to relief on any ground. Accordingly, Banister's habeas petition will be denied.

**I.     The Wisconsin Court of Appeals Did Not Unreasonably Reject Banister's Ineffective Assistance of Counsel Claims.**

Banister claims that his trial counsel was ineffective because he erroneously advised Banister that: (1) even if he went to trial and won, he would still be found guilty of having sex with a minor; and (2) if he pleaded guilty the State would ask for close to time served. The controlling Supreme Court precedent for an ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish a violation of *Strickland*, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, the *Strickland* test requires the petitioner to establish both (1) deficient performance by counsel and (2) prejudice. *See id.*

Regarding the deficient-performance prong, great deference is given to counsel's performance, and the petitioner has a heavy burden to overcome the strong presumption of effective performance. *Id.* at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003). Banister must thus "establish specific acts or omissions of his counsel which constitute ineffective assistance," to which this Court then "determine[s] whether these acts or omissions were made outside the wide range of professionally competent assistance." *See Coleman*, 318 F.3d at 758 (citing *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000)). To show prejudice, Banister must demonstrate a "substantial, not just conceivable" likelihood of a different outcome absent counsel's deficient performance. *See Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). The Supreme Court has addressed *Strickland*'s application to ineffective assistance claims when counsel advises a defendant to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this setting, the defendant must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. A court need not address both performance and prejudice; if the defendant makes an insufficient showing on one, the inquiry ends. *Strickland*, 466 U.S. at 697.

### A. The Wisconsin Court of Appeals Did Not Unreasonably Reject Banister's First Ineffective Assistance Claim.

Banister first claims that his trial counsel was ineffective because he told Banister prior to his plea hearing that "even if [Banister] went to trial and won [he] would still get found guilty of having sex with an underage person." (ECF No. 1 at 7.) To be entitled to habeas relief, Banister must establish that the state courts' denial of his claim on this ground "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Because the record establishes that the state court's ruling was reasonable, Banister's first claim will be denied.

Banister's first ineffective assistance claim fails because the record confirms that trial counsel accurately informed Banister of the situation he was facing. One of the charges Banister faced—and the charge he ultimately pleaded guilty to—was second-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(2). (*See* ECF No. 8-1 at 1.) This is a strict liability offense that prohibits sexual contact or intercourse with a person younger than 16 years of age. *See State v. Olson*, 616 N.W.2d 144, 148 (Wis. Ct. App. 2000). Under Wisconsin law, neither consent of the child nor the perpetrator's lack of knowledge of the child's age is a defense to a charge under the statute. *Id.* Trial counsel confirmed at Banister's *Machner* hearing that he informed Banister that consent was not a defense to the charge for sexual assault of a child. (ECF No. 8-10 at 9, 13–14.) And Banister has admitted at every stage of his state court proceedings, both pre- and post-conviction, as well as in his habeas filings, that he had sexual contact with D.C., who was fifteen years old at the time. (ECF No. 1 at 8–9; ECF No. 8-4 at 2; *see* ECF No. 8-8 at 17, 24; ECF No. 8-10 at 38–39, 46; ECF No. 9 at 3; ECF No. 11 at 6.) Accordingly, Banister's consent defense—the only defense he raised—would have been inapplicable to the crime to which he agreed to plead guilty. The state courts' rejection of this claim based on this record was entirely reasonable.

Banister argues that he "believed he didn't have [any] option, his only choice was to plead guilty," and that he "believed it was a win and still lose situation." (ECF No. 9 at 2.) This does not support a claim that counsel was ineffective; rather it shows that counsel explained, and Banister understood, the situation he was facing. The State had DNA evidence confirming that he had had sexual contact with D.C., (*see* ECF No. 8-9 at 21), and Banister has repeatedly admitted to having sexual contact with D.C. Thus, counsel acted appropriately in advising Banister that he had an uphill battle on the Section 948.02(2) charge even if he proceeded to trial and argued the victim's consent.

It also appears that Banister is confused about the charges against him based on a later change in Wisconsin law. Banister twice refers to Wis. Stat. § 948.093, a statute enacted in March of 2018, more than a year after Banister was convicted and sentenced. (*See* ECF No. 9 at 3–4.) Under Section 948.093, when a defendant younger than nineteen has sexual contact with a child who is exactly fifteen years of age, the defendant is guilty of only a Class A misdemeanor. But Banister was charged with a Class C felony under Section 948.02(2); Section 948.093 was not in place when he was convicted and sentenced. Section 948.093 has no application to Banister or his habeas petition.

Banister's ineffective assistance claim also fails because he cannot show prejudice from counsel's allegedly deficient performance. To show prejudice in the context of a guilty plea, Banister must show that there was a reasonable probability that—absent counsel's errors—he would have elected to go to trial rather than plead guilty. *See Hill*, 474 U.S. at 59. Banister argues trial counsel erroneously led him to believe "that he had no other choice but to plead guilty to a charge he was adamant he was not guilty of." (ECF No. 9 at 3.) But, as the Court explained above, Banister's understanding of the situation he faced was fundamentally correct and a more technically accurate understanding of trial counsel's accurate advice would only have made that advice more persuasive. The record does not support Banister's conclusory assertion that he would have chosen to go to trial if had he a more robust understanding of the parameters of the law concerning consent. Accordingly, the Wisconsin Court of Appeals' rejection of Banister's first ineffective assistance argument was reasonable and not contrary to Federal law.

**B. Banister Has Not Presented Clear and Convincing Evidence That Trial Counsel Promised Him the State Would Ask for Close to Time Served.**

Banister's second ineffective assistance claim is predicated on his allegation that trial counsel promised Banister that the State "would ask the court to sentence him to close to time served." (ECF No. 1 at 8.) This claim was the subject of extensive testimony at Banister's *Machner* hearing and the state court specifically found that the prosecution had made no such commitment and that Banister's trial counsel never told him that the government had made this promise. (ECF No. 8-4 at 2, 4–5.) Banister's claim is thus based on a challenge to the factual findings of the state court, and, under AEDPA, he must show that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This Court presumes that determinations of factual

issues made by the state court are correct and Banister can only rebut this presumption with clear and convincing evidence that the state court's finding was erroneous. *See* 28 U.S.C. § 2254(e)(1).

The record amply supports the state court's findings. Trial counsel stated unequivocally that he never told Banister the State would ask for close to time served. (ECF No. 8-10 at 10, 21–22.) The state court specifically found this testimony credible. (*See id.* at 81.) And the court also found Banister's testimony to the contrary not to be credible. (*Id.*) Banister provides no clear and convincing evidence that these findings were wrong.

Banister claims that his mother signed an affidavit stating that trial counsel "inform[ed] her of what he thought Banister [would] receive from the court." (ECF No. 11 at 4.) Even if correct, trial counsel opining on what he *thinks* the sentencing court will do is not evidence that he *promised* Banister that the State would ask for close to time served. Banister also points to statements trial counsel made at the *Machner* hearing. (ECF No. 1 at 9–11; ECF No. 9 at 4; ECF No. 11 at 3–4.) But the testimony cited relates only to counsel's own sentencing arguments and his conversations with Banister regarding the recommendations he would make at sentencing. (*See* ECF No. 8-10 at 24–27.) None of this testimony indicates counsel promised Banister anything about what the State would recommend. Banister also cites his own testimony from the *Machner* hearing and claims trial counsel coerced him to plead guilty by making the alleged promise. But again, the postconviction court found Banister's testimony not "credible at all." (ECF No. 8-10 at 81.) Banister has provided no reason for this Court to disregard that credibility finding.

To the contrary, the record supports the state court's finding: Banister confirmed at his change of plea hearing that he understood the state would be "free to argue" for any sentence and he had not been promised anything to make him plead guilty. (ECF No. 8-8 at 5, 20.) At sentencing, Banister twice confirmed his understanding that the State would be "free to argue" for any sentence. (ECF No. 8-9 at 2–4.) And Banister made no objection when the State recommended a forty-year sentence comprised of twenty-five years initial confinement followed by fifteen years of extended supervision. (*See id.* at 5.) The postconviction court did not err in finding that Banister's self-serving testimony was not credible in the face of this contrary evidence. Accordingly, Banister cannot show that the state court's denial of his second claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* § 2254(d)(2).

## II. Banister's Due Process Challenge Also Fails.

In his petition and briefing, Banister makes two different due process arguments. First, he alleges that the state court "used inaccurate information to sentence Mr. Banister," by sentencing Banister based on the violent allegations in the complaint, rather than the consensual encounters Banister insists took place. (ECF No. 1 at 11-14.) Second, Banister also contends that his "guilty plea was not knowing, intelligent, and voluntary" because the court had "an obligation . . . to make sure that [Banister] underst[ood] all the charges [he] is pleading out to." (*Id.* at 14–16.) While it is unclear that Banister properly pleaded the second argument in his habeas petition, it does not matter because he has not shown he is entitled to relief on either due process theory.

### A. Banister Has Not Shown That He Was Sentenced Using Inaccurate Information.

As an initial matter, Respondent argues any due process claim is procedurally defaulted because Banister failed to raise it in the Wisconsin Supreme Court. The procedural default doctrine bars a federal district court from hearing either a claim which was never presented to the state courts, or a claim that was denied on adequate and independent state law grounds. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must raise his claim at every level of review in the state courts and "present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). The record confirms that Banister did not argue to the Wisconsin Supreme Court that his due process rights were violated because he was sentenced using inaccurate information. (*See* ECF No. 8-5.) But Banister did argue that he should have been sentenced based only on the allegations he admitted to (having consensual sex with D.C.), rather than the allegations of violent sexual assault contained in the criminal complaint. (*See id.* at 4–5.) The Court need not decide whether Banister's failure to invoke due process specifically has resulted in a procedural default because his claim fails on the merits in any event.

A criminal defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir. 1991) (citing *United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41 (1948)). To succeed on a due process challenge to his sentence, Banister must show that information before the sentencing court was inaccurate and that the court relied on that inaccurate information in sentencing. *Id.* (citing *United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984)).

The Wisconsin Court of Appeals concluded that the circuit court's sentencing decision complied with procedural and substantive sentencing requirements. (ECF No. 8-4 at 5–6.) Because Banister has not shown that the state court's decision was contrary to Federal law or involved an unreasonable application of that law or determination of fact, his claim will be denied.

Banister largely focuses on the sentencing court's reliance on the violent allegations in the criminal complaint: "The public also needs protection from those that are involved in these kinds of crimes; armed masked, stranger sexual assaults that involve, at least in the case of DRC, physical violence and humiliation." (ECF No. 1 at 13 (quoting ECF No. 8-9 at 36).) Banister argues that this information is inaccurate because "[t]he DA opted out of trial for a reason," that "force would not be able to be proven." (*Id.* at 14.) He repeats the prosecutor's testimony at the change-of-plea hearing that D.R.C. was not consistently cooperative with the State, that D.C. desired the case to be resolved, and that Banister had a potential defense witness that would testify to witnessing a consensual encounter between Banister and D.C. (ECF No. 9 at 4–5 (quoting ECF No. 8-9 at 3–4).) According to Banister, between the perceived weaknesses in the State's case and his own admission only to consensual sex with D.C., it was a due process violation for the court to rely on the violent nature of the crimes alleged in the complaint when sentencing Banister.

Banister misunderstands the standard for establishing a due process violation based on inaccurate information. By pleading guilty, Banister forfeited his right to make the State prove the charges against him beyond a reasonable doubt. (*See* ECF No. 8-8 at 15.) And Banister agreed that the dismissed charges would be "read in" and could be considered by the court at sentencing. (*Id.* at 28.) To establish a constitutional violation, Banister needs to show affirmatively that the information the court relied on was actually inaccurate. He has not done so. Even viewing his arguments generously, Banister merely raises questions about the State's case if it had gone to trial on all of the charges filed against him. This does not establish that the allegations in the complaint were inaccurate.

### B. The Wisconsin Court of Appeals Did Not Err in Concluding that Banister's Guilty Plea Was Knowing, Voluntary, and Intelligent.

Banister also argues that his due process rights were violated because the state court failed to make sure he fully understood the charge he was pleading guilty to. (ECF No. 9 at 5–6.) The Wisconsin Court of Appeals rejected this claim after a review of the full record, concluding that "the circuit court complied with its obligations for taking guilty pleas" and "there would be no arguable merit to a claim of circuit court error with regard to the plea." (ECF No. 8-4 at 3.) While

the court of appeals did not explicitly invoke the constitutional due process requirements, it relied on Wisconsin case law interpreting those constitutional requirements. (*Id.* (citing *State v. Bangert*, 389 N.W.2d 12 (Wis. 1986); *State v. Brown*, 716 N.W.2d 906 (Wis. 2006)).) Accordingly, the state court's denial of Banister's claim is entitled to AEDPA deference.

"Due process requires that a guilty plea, to be valid, be made voluntarily, intelligently, and knowingly." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (citing *Brady v. United States*, 397 U.S. 742, 747 (1970); *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993)). A plea is voluntary if it is not induced by threats or misrepresentations, and the defendant is made aware of its direct consequences. *Id.* (citing *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989)). A knowing and intelligent plea requires that the defendant be competent, aware of the charges, and advised by competent counsel. *Id.* (citing *Jordan*, 870 F.2d at 1317).

Banister complains that his trial counsel "failed to fully explain to Mr. Banister what he was actually pleading to, to the point that Mr. Banister was unsure and asked for clarification from the judge who failed to answer his question directly . . . ." (ECF No. 1 at 15.) But as detailed above, Banister's trial counsel provided him with accurate advice and competent representation. And while Banister did express some confusion at his plea hearing, the record is clear that he was aware of the charges against him. In fact, the change-of-plea transcript confirms the state court performed an exceptionally thorough plea colloquy. (*See* ECF No. 8-8 at 5–28.) Thus, the state court's denial of relief on this ground was also not unreasonable, contrary to Federal law, or based on an unreasonable determination of fact. Accordingly, Banister's habeas petition will be denied.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitution right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Banister's petition for a writ of habeas corpus, ECF No. 1, is **DENIED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that, because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), a certificate of appealability **SHALL NOT ISSUE**.

Dated at Milwaukee, Wisconsin on October 8, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge